[No. 35174.   Department Two.   March 17, 1960.]

THE STATE OF WASHINGTON, *on the Relation of Claude Gordon et al., Appellants,* v. A. W. ALLEN, *as County Superintendent of Schools, et al., Respondents.*[1]

*Byron D. Coney* and *Bruce Bartley,* for appellants.

*The Attorney General* and *Elvin J. Vandeberg, Special Assistant,* for respondents.

HILL, J.—This is an action contesting the validity of an order transferring a substantial portion of one school district to another.

The Zillah school district was classified, in 1956, by the county committee on school district organization for Yakima county, hereinafter called the county committee, as an

[1]Reported in 350 P. (2d) 465.

adequate and satisfactory administrative unit. It maintained three schools: *i.e.*, elementary, junior high, and high school.

However, there had been a feeling, dating back to 1942, on the part of some members of the county committee and some members of the state board of education, that the Zillah district was economically and educationally unsound. Prior to the transfer of part of the district, the validity of which is here attacked, the district received about seventy-five per cent of its operating revenues from state sources. The high school had approximately one hundred and fifty students, whereas educational authorities consider five to six hundred as desirable, with three hundred as an efficient and economical minimum. It was, at best, a marginal district, and its qualification as an adequate and satisfactory unit tenuous.

In the spring of 1957, the county committee, acting under RCW 28.57.050, proposed to the state board of education that the Zillah district and the Granger district be consolidated. The state board approved (RCW 28.57.060), and, as provided in RCW 28.57.070, the consolidation was submitted to the voters of both districts. It was rejected by the voters of the Zillah district almost two to one.

In 1958, a petition was presented to the county superintendent, as secretary of the county committee, asking for the transfer of all of the portion of the Zillah district, east of Lucy Lane, to the Granger district. They were seeking to proceed under RCW 28.57.180 (since amended in 1959), under which transfers of territory from one district to another have been made by the county committees without any vote of the remainder of the district from which the territory is being transferred. (See, also, RCW 28.57.050, 28.57.060, 28.57.070.)

The petitions were signed, as required, by a "majority of the heads of families" in the portion to be transferred. The area involved is almost one-half of the district (of some forty-five sections in the district, twenty are included in the proposed transfer); the assessed value of the area sought to be transferred exceeded five hundred thousand dollars, which is more than one-fourth of the assessed valuation of

the Zillah district; and approximately one-fourth of the anticipated student enrollment in the district for the ensuing school year was resident in that area.

The proposed transfer was approved by the county committee April 21, 1958, and, again, on May the 9th; and, in turn, by the state board of education June the 6th. An order was made by the county superintendent, purportedly effecting the transfer, June 17, 1958.

This action followed. The transfer has been held in abeyance pending the outcome of this litigation.

The issue is the extent of the power of the county committee and the county superintendent, where proceedings are commenced under RCW 28.57.180, to transfer the territory and students of one school district to another within the county.

■ Inasmuch as the statute requires an election before two districts can be consolidated, it must follow that the county committee and county superintendent cannot do indirectly what they cannot do directly, and compel a consolidation by transferring so much of the territory and school population of a district that such district can no longer effectively operate its schools. There was, seemingly, a complete lack of concern by the county committee as to what the effect of the transfer would be on the remaining portion of the Zillah district, other than the expectation that— within the year of grace which the district would have—a solution of its problem would be worked out. The year of grace referred to is attributable to the fact that, for the first year after the transfer, the portion of the money received from the state (based on daily attendance) would be computed on the basis of ninety-five per cent of the previous year's attendance.

Realistically, all of the evidence points to the fact that the Zillah district had, after that first year, three choices which were in the order of preference of those who were experts in the field: (1) consolidation with Granger or Toppenish, (2) close the high school, (3) maintain existing standards by excess millage levies.

The assistant county superintendent, whose attendance and financial figures were most optimistic, conceded that if Zillah kept its high school the excess millage required would possibly amount to three to five mills on an annual basis. He saw all the silver linings: no disadvantages from a forced consolidation of classes in some grades, and positive advantages from excess levies because it made the people "more interested in what is going on." Other figures, as to the excess levies which would be required if the high school were retained, were somewhat higher.

The trial court found that, after the transfer of

" . . . approximately one-fourth of the assessed valuation of the Zillah School District, and . . . approximately one-fourth of the children enrolled in the Zillah School District . . ."

the already marginal Zillah school district would still be "in such a condition that it can effectively operate its schools."

The finding, to have any support in the record, would have to be amplified by the further finding that such operation would be dependent upon excess millage levies for operational expenses.

We agree with the trial court that the county committee acted without malice or other improper motive. They acted with confident certainty that the transfer was for the best interests of the transferred portion of the district, and in furtherance of the spirit of consolidation legislation.

Good motivation does not prevent the end result from being arbitrary and unreasonable, so far as the Zillah district is concerned. If the Zillah district had no choice, except the first two, i.e., consolidation, or closing the high school, there would be no question but that the district could not effectively operate its schools after the transfer. The argument is that by excess levies Zillah could maintain its schools without a serious lowering of educational standards; and, inasmuch as many districts in the state are dependent on excess levies, the Zillah district can, if it is willing to pay the price, continue to operate its schools.

The county committee cannot, by such a process of dismemberment, require the remnant of a district to pay that price to maintain its identity. We hold that, as a matter of law, it is arbitrary and capricious for a county committee to approve a transfer of territory and school population from a school district when such transfer will compel a school district, which has not theretofore been dependent upon excess levies for regular operational expenses, to be thereafter dependent upon such levies if its schools are to be effectively operated.

As we have indicated, we do not question the motives of the county committee in this case. The end results anticipated are, from an educational standpoint, entirely laudable. It is the method of economic coercion (not contemplated by the school code) which we find to be arbitrary and unreasonable.

The county committee, the state board, and the trial court may have been misled by the almost complete *carte blanche* apparently given to such transfers in *School Dist. No. 88 of Lincoln County v. Morgan* (1928), 147 Wash. 321, 328, 266 Pac. 150, where we said:

" . . . Manifestly, the desire of the petitioners is the chief thing to be considered, *if it does not result in leaving the remaining school district unable to maintain school at all.* This the county superintendent testified was not the fact." (Italics ours.)

The effect of the transfer on the remainder of the district was not a controverted issue in that case. The italicized language used was appropriate to the occasion, but much too broad for general application. As we have previously indicated, a transfer is arbitrary and capricious so far as the remaining portion of the school district is concerned, where, after the transfer, it must levy excess millage for operational expenses where an excess millage was not theretofore necessary for such expenses.

The issues—as to the sufficiency of the petitions for the transfer, and as to the adjustment of the bonded indebtedness of the Zillah district—do not need to be considered.

It is of interest to note that such transfers, as the one

with which we are here concerned, are no longer permissible; the legislature, in 1959, having prohibited the transfer of territory without an election where the transfer involves ten per cent or more of the student population. (Laws of 1959, chapter 268, p. 1253.)

The judgment of February 13, 1959, which approved

" . . . that portion of the order of the County Superintendent of Schools, Yakima County, Washington, entered on June 17, 1958, transferring the territory east of Lucy Lane and Lucey Road from Zillah School District No. 205 to Granger School District No. 204 . . . "

is reversed; and the trial court is directed to disapprove the order of the county superintendent in its entirety and to enjoin its enforcement.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.